TRACY S. COMBS (Cal. Bar No. 298664)
combst@sec.gov
CASEY R. FRONK (Illinois State Bar No. 6296535)
*PRO HAC VICE* APPLICATION PENDING
FronkC@sec.gov
Counsel for Plaintiff
U.S. Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, UT 84101-1950
Tel.: (801) 524-5796
Fax: (801) 524-3558

Local Counsel:
AMY JANE LONGO (Cal. Bar. No. 198304)
LongoA@sec.gov
444 S. Flower Street, Suite 900
Los Angeles, CA 90071
Tel: (323) 965-3835
Fax: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Western Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:21-cv-4211 |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| LFS FUNDING LIMITED PARTNERSHIP, a private Wyoming Limited Partnership; STEPHEN MICHAEL THOMPSON; STEVEN ROBERT COMISAR; DALE JAY ENGELHARDT; and, ROSS GREGORY ERSKINE, | |
| Defendants, | |
| and | |
| BROOKDALE CONSULTING LLC, a private California Limited Liability Company; EXECUTIVE PERFORMANCE GROUP, INC., a private California corporation; MERIDIAN POINT, LLC, a private Nevada Limited Liability Company; and PERSONAL GROUP, LLC, a private Nevada Limited Liability Company, | |
| Relief Defendants. | |

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b); 77v(a)]; Sections 21(d) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d); 78a(a)]; and 28 U.S.C. § 1331.

2.     Venue in this District is proper because each Defendant is found in, inhabits, and/or transacts business in the Central District of California, and because one or more acts or transactions constituting the violations occurred in the Central District of California.

3.     The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. § 77t(b); 77t(d)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. § 78u(d); 78u(e)] to enjoin such acts, practices, and courses of business, and to obtain civil money penalties and such other and further relief as this Court may deem just and appropriate.

4.     Defendants were, individually and collectively, involved in the offer and sale of the securities, as that term is defined under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)], issued by Defendant LFS Funding Limited Partnership ("LFS Funding" or the "partnership").

5.     Each Defendant, directly or indirectly, made use of the mails or means or instrumentalities of interstate commerce in connection with the conduct alleged in this Complaint.

## SUMMARY OF THE ACTION

6.     Between approximately May 29, 2018 and May 29, 2019, Defendant LFS Funding raised at least $618,000 from approximately 14 investor households through a securities offering of limited partnership interests intended to fund the

operation of two podiatry clinics (the "Podiatry Clinics") in Henderson, Nevada and Dallas, Texas.

7.     Defendant LFS Funding's private placement memorandums ("PPM(s)") concerning the offering were materially misleading about a number of topics, including:  (1) that investor funds were being used to pay significant commissions to solicitors, such as Defendants Steven Robert Comisar, Dale Jay Engelhardt, and Ross Gregory Erskine; (2) that Defendant Stephen Michael Thompson, an individual with a history of state securities law violations, was the true and undisclosed control person of LFS Funding; and (3) that Thompson was causing the Podiatry Clinics to engage in a skimming scheme through conflicted transactions for Thompson's personal benefit.

8.     Defendant LFS Funding also made materially misleading statements and omissions in Forms D filed with the Commission in connection with the offering, as detailed below.

9.     To accomplish the LFS Funding securities offering, Defendant Thompson, acting on LFS Funding's behalf as its *de facto* control person, recruited, engaged, and supervised solicitors—including Defendants Comisar, Engelhardt, and Erskine—who solicited prospective investors to purchase interests in the partnership, including by providing to investors the LFS Funding PPMs, which contained materially misleading statements and omissions.  These solicitors—including Defendants Comisar, Engelhardt, and Erskine—directly or indirectly obtained money or property and received transaction-based compensation (*i.e.*, commissions) upon successfully soliciting an investor to purchase interests in the partnership.

10.     Defendants Comisar, Engelhardt, and Erskine—each of whom has a criminal record or record of regulatory discipline—used aliases in connection with their efforts to solicit investors. This use of aliases operated to—and, upon information and belief, was intended to—prevent investors from researching

Defendants' backgrounds and learning of Defendants' criminal and disciplinary records.

11.     At all relevant times, Defendants Comisar, Engelhardt, and Erskine were not registered as brokers or dealers with the Commission nor associated with a broker or dealer registered with the Commission.

12.     By engaging in this conduct, as further described herein, Defendant LFS Funding violated and, unless restrained and enjoined by this Court, may continue to violate Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. § 77e(a); 77e(c); 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]; and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5]; and, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], aided and abetted Defendants Comisar, Engelhardt, and Erskine's violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

13.     By engaging in this conduct, as further described herein, Defendant Thompson violated and, unless restrained and enjoined by this Court, may continue to violate Sections 5(a), 5(c), 17(a)(1), and 17(a)(3) of the Securities Act [15 U.S.C. § 77e(a); 77e(c); 77q(a)(1); 77q(a)(3)]; Sections 10(b) and 15(a)(1) of the Exchange Act [15 U.S.C. § 78j(b); 78o(a)(1)]; and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5]; and, pursuant to Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)], aided and abetted Defendant LFS Funding's violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

14.     By engaging in this conduct, as further described herein, Defendant Comisar violated and, unless restrained and enjoined by this Court, may continue to violate Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. § 77e(a); 77e(c); 77q(a)]; Sections 10(b) and 15(a)(1) of the Exchange Act [15 U.S.C. § 78j(b); 78o(a)(1)]; and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5].

15.     By engaging in this conduct, as further described herein, Defendants Engelhardt and Erskine violated and, unless restrained and enjoined by this Court,

may continue to violate Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. § 77e(a); 77e(c); 77q(a)]; Sections 10(b) and 15(a)(1) of the Exchange Act [15 U.S.C. § 78j(b); 78o(a)(1)]; and Exchange Act Rules 10b–5(a) and 10b–5(c) [17 C.F.R. § 240.10b–5(a); 240.10b–5(c)].

16.    By engaging in this conduct, and as further described herein, Defendant Engelhardt violated and, unless restrained and enjoined by this Court, may continue to violate Section 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. § 78o(b)(6)(B)(i)].

## DEFENDANTS

17.    **LFS Funding Limited Partnership** is a Wyoming Limited Partnership with its primary place of business in the Los Angeles, California area. The nominal general partner of the partnership during much of the relevant period was Stacey Marie Lira ("Lira"), but Lira was merely a figurehead and nominee for Thompson. The present nominal general partner of the partnership is Health Care Expansion Associates, Inc., a private Wyoming corporation controlled by Thompson. At all relevant times, Defendant Thompson possessed undisclosed *de facto* control over LFS Funding and its affiliated entities.

18.    **Stephen Michael Thompson**, age 72, is a resident of the Los Angeles, California area. Thompson, acting through nominees/figureheads, exercised undisclosed *de facto* control over LFS Funding and its affiliated entities Laser Foot Surgery Centers, LLC (the "Henderson Clinic"); LFSC Dallas, LLC (the "Dallas Clinic" and, together with the Henderson Clinic, the "Podiatry Clinics"); and Medical Office Fulfillment, LLC, a purported medical supply purchasing agent controlled by Thompson (the "Purchasing Agent"). Thompson also recruited and exercised control over a securities sales force of unregistered brokers whom he, on behalf of LFS Funding, engaged to solicit prospective investors to invest in securities issued by LFS Funding. Thompson has been the subject of securities-related enforcement actions brought by several states.

4

19. **Steven Robert Comisar (a/k/a Jim Brown; Jennifer Gray)**, age 58, is believed to be a resident of the Los Angeles, California area. Comisar, who has an extensive criminal record, was engaged by Thompson to solicit prospective investors to invest in securities issued by LFS Funding.

20. **Dale Jay Engelhardt (a/k/a Dale Lane)**, age 56, is believed to be a resident of the Los Angeles, California area. Engelhardt was engaged by Thompson to solicit prospective investors to invest in securities issued by LFS Funding, and did so both directly and, upon information and belief, through others who worked under him. Engelhardt received commissions for this solicitation work through two business entities Engelhardt controls: Brookdale Consulting LLC and Executive Performance Group, Inc. On May 4, 2011, Engelhardt, who was the subject of two previous injunctive actions brought by the Commission, was barred from association with any broker, dealer, investment adviser, municipal securities dealer, or transfer agent. (*See Securities Exchange Act of 1934 Release No. 64389* (May 4, 2011.))

21. **Ross Gregory Erskine (a/k/a John Thompson)**, age 49, is believed to be a resident of the Los Angeles, California, area. Erskine, who was a subject of an enforcement action brought by the Commodity Futures Trading Commission (*see CFTC Rel. No. 4879-04;* Jan. 15, 2004), was engaged by Thompson to solicit prospective investors to invest in securities issued by LFS Funding and did so directly and/or through others who worked under him. Erskine received commissions for this solicitation work through two business entities Erskine controls: Meridian Point, LLC; and Personal Group, LLC.

## RELIEF DEFENDANTS

22. **Brookdale Consulting LLC**, is a private California limited liability company with no known place of business that is controlled by Engelhardt. Brookdale Consulting received funds through the misconduct described herein.

23.     **Executive Performance Group, Inc.**, is a private California corporation with no known place of business that is controlled by Engelhardt. Executive Performance Group received funds through the misconduct described herein.

24.     **Meridian Point, LLC**, is a private Nevada limited liability company with no known place of business that is controlled by Erskine. Meridian Point received funds through the misconduct described herein.

25.     **Personal Group, LLC**, is a private Nevada limited liability company with no known place of business that is controlled by Erskine. Meridian Point received funds through the misconduct described herein.

## FACTS

### The Fraudulent LFS Funding Securities Offering

26.     Beginning around May 2018 and continuing at least through May 2019, LFS Funding, through solicitors engaged on its behalf by Thompson (referred to hereinafter as the "Unregistered Brokers" and discussed further below), began soliciting prospective investors by telephone to purchase its limited partnership interests, which were securities (the "LFS Funding Securities Offering"). The purpose of the LFS Funding Securities Offering was to raise funds for the Podiatry Clinics surreptitiously controlled by Thompson.

27.     In addition to LFS Funding, Thompson also controlled the Purchasing Agent. Thompson planned to cause the Podiatry Clinics, using funds raised from investors, to purchase medical and other equipment and services from the Purchasing Agent with unjustified markups, which would enable Thompson to personally profit from the expenditure of investor funds through the excess markups (the "Skimming Scheme").

28.     Upon information and belief, Thompson provided the Unregistered Brokers (including Comisar, Engelhardt, and Erskine) with a suite of documents related to the LFS Funding Securities Offering that the Unregistered Brokers, directly

and/or indirectly, distributed to prospective investors via email, website portals, FedEx, and/or mail.

29.     The documents concerning the LFS Funding Securities Offering provided to investors by the Unregistered Brokers (including Comisar, Engelhardt, and Erskine) included, upon information and belief, PPMs (with various exhibits) that described the offering and were specific to one of the Podiatry Clinics, such as the Henderson Clinic (*see* Henderson Clinic PPM, attached as Ex. A.) or the Dallas Clinic (*see* Dallas Clinic PPM, attached as Ex. B).

30.     Thompson, as the *de facto* control person of LFS Funding, possessed ultimate authority as to the content of the PPMs attached hereto as Exhibits A and B and the PPMs' distribution, directly and/or indirectly, to prospective investors.

31.     Both PPMs concerning the LFS Funding Securities Offering contained material misstatements and omissions, including the following:

| Statement in PPM | Why the Statement Was Misleading |
|---|---|
| Broker commissions and/or cash retained by LFS Funding from investor proceeds raised in the offering would be limited to $37,500. (*See* Ex. A, p. i; Ex. B, p. i.) | In reality, LFS Funding, directly or indirectly, paid out at least $170,200 in commissions to the Unregistered Brokers, and the vast majority of the commission payments were made with investor funds. |
| "The funds from the sale of the [limited partnership interests] will have a critical effect on the future success" of LFS Funding and, LFS Funding "will use the proceeds as in the Business Summary [stated in the PPMs]… upon sale of" the limited partnership interests to investors, and that "[m]ost risks are minimized, but not extinguished, with the funding in this offering raised." (Ex. A, p. 4; Ex. B, p. 4.) The PPMs further stated that the amount of income generated by the | These statements, as well as the Business Summaries included in the PPMs, failed to disclose to investors that a substantial portion of the funds raised from investors would be paid as commissions to Unregistered Brokers, rather than invested in the business. Further, the Business Summaries did not disclose that investor funds directed to the operation of the Podiatry Clinics would be diverted by Thompson's Skimming Scheme. Both the payment of substantial commissions to the |

| Statement in PPM | Why the Statement Was Misleading |
|---|---|
| Clinics could not be predicted, but that each investors' "investment is safe if minimum funding is achieved and the underlying property acquired." (Ex. A, p. 11; Ex. B, p. 11.) | Unregistered Brokers and the Skimming Scheme would increase the risk of the investment by diverting investor funds from income-generating activities of the Podiatry Clinics which might produce investor returns. |
| "The establishment of LFS Funding, LP is for the funding and operation of" the Clinics and that "92.5%" of funds raised from investors shall be used for the operating expenses of the Clinics—such as the purchase of medical equipment and supplies—including in the first 60-90 days of operation of the Clinics.  (Ex. A, pp. i, 9, 13; Ex. B, p. i, 9, 13.) | These statements failed to disclose that the purchases of these various items by the Podiatry Clinics would largely flow through the Purchasing Agent and result in undisclosed profits to Thompson by way of the Skimming Scheme. |
| "The maximum funding [to be raised in the LFS Funding offering] is $500,000 with 10 Units at $50,000 per Unit" (Ex. A, p. i; Ex. B, p. i) and that "[t]he Limited Partners' interest cannot be diluted during the life of the Partnership…." (Ex. A, passim; Ex. B, passim.) | In reality, LFS Funding raised at least $518,000 for the Henderson Clinic and an additional $100,000 was subsequently raised for the Dallas Clinic.  Thus, investors' interests in the partnership were diluted. |
| "LFS FUNDING, LP is highly dependent upon the services of its principals and their contacts in the industry" (Ex. A, p. 3; Ex. B, p. 3) and that "control of LFS FUNDING, LP will reside with the Managing Partner." (Ex. A, p. 4; Ex. B, p. 4.) | Stacey Marie Lira, the named Managing Partner of LFS Funding, was a figurehead only and had no material contacts in the podiatry industry.  In reality, Thompson exercised control of the LFS Funding and the proceeds of the offering. |

32.    In addition, both PPMs included, as exhibits, an *Equipment & Instrument List* over which Thompson possessed ultimate control and which the Unregistered Brokers distributed, directly or indirectly, to investors.  *See* Ex. A, p. 47, and Ex. B, p. 46.

8

33.     This *Equipment & Instrument List* document was materially misleading in that it identified the source of all of the identified equipment and instruments as being the Purchasing Agent (*i.e.*, Medical Office Fulfillment, LLC) but failed to disclose that the Purchasing Agent was under common control (*i.e.*, Thompson's control) with LFS Funding and the Podiatry Clinics, and existed, in whole or in part, in order to enable Thompson to skim a portion of investors' money through unnecessary markups on the Podiatry Clinics' purchases (*i.e.*, the Skimming Scheme).

34.     At the time the PPMs were drafted and disseminated to investors, LFS Funding and Thompson knew or were reckless in not knowing that the statements contained therein, as set forth in Paragraphs 31 to 33, above, were false or misleading, and/or that they contained omissions.  Upon information and belief, Thompson and LFS Funding did not disclose Thompson's control of LFS Funding and involvement in the LFS Funding Securities Offering because of Thompson's prior record of state securities enforcement actions.

35.     Unregistered Brokers Comisar, Engelhardt, and Erskine—each of whom has a criminal record or record of regulatory discipline—used aliases in connection with their respective efforts to solicit investors for the LFS Funding Securities Offering. This use of aliases operated—and, upon information and belief, was intended— to prevent investors from researching Comisar, Engelhardt, and Erskine and learning of their respective criminal records and records of regulatory discipline; and Comisar, Englehardt, and Erskine knew or were reckless in not knowing that the use of such aliases would be materially misleading to investors.  In addition, Comisar, Engelhardt, and Erskine knew or were reckless in not knowing that the PPMs distributed to investors for the LFS Funding Securities Offering did not disclose the commissions they anticipated receiving in connection with the offering, and that such omission would be materially misleading to investors.

## Fraud in Connection with LFS Funding's Forms D

36.    In connection with the LFS Funding Securities Offering, Thompson caused LFS Funding to file various Forms D with the Commission on or around August 20, 2018 and February 19, 2019, which also contained material misstatements and omissions concerning the offering, including the following (*see* Forms D, attached hereto as Ex. C):

A. Sections 3 of the Forms D concerning "Related Persons" identified Lira as the "Executive Officer" and Managing Partner of LFS Funding, when in reality she was merely a nominee or figurehead, and the true control person of LFS Funding was Thompson, who was not listed on the Form D at all.

B. Sections 12 of the Forms D concerning "Sales Compensation" states that there will be no sales compensation paid in connection with the LFS Funding Securities Offering, whereas Thompson, using investor money, was paying the Unregistered Brokers commissions of 25% to 36% of investor proceeds.

C. Likewise, Section 15 of the Forms D concerning "Sales Commissions & Finders' Fees and Expenses" contain $0 entries, whereas, as described above, Thompson was paying the Unregistered Brokers commissions.

37.    In regard to the LFS Funding Securities Offering, no registration statement was in effect, no registration statement had been filed with the Commission, and no exemption from registration validly applied.

38.    At the time the Form Ds were filed with the Commission, LFS Funding and Thompson knew or were reckless in not knowing that the statements contained in the Form Ds were false or misleading, and/or that they contained omissions.

## Comisar's Fraudulent Email Statements

39.    During or around February 2019, Defendant Comisar was engaged, directly or indirectly, by Thompson to solicit investors to invest in the LFS Funding Securities Offering and was provided with offering materials related to the Dallas Clinic, including the PPM attached hereto as Exhibit B.

40.     Shortly thereafter, Comisar, introducing himself as "Jim Brown," contacted a prospective investor, LB, and solicited LB to invest in LFS Funding. Comisar, upon information and belief, sent LFS Funding's offering documents, including the Dallas Clinic PPM, to LB to review and complete. *See* Comisar emails, attached as Ex. D.

41.     Evidently impatient at LB's delay in remitting his investment funds and completing the transaction (and thus triggering payment of Comisar's commission), Comisar, as shown in the table below, began sending a series of materially misleading email messages to LB from Comisar's "Jim Brown" and "Jennifer Gray" (another alias of Comisar's) email accounts, as follows:

| Date | Statement | Why Statement Was False and/or Misleading |
|------|-----------|-------------------------------------------|
| February 27, 2019 | "Per your instructions we purchased a unit for you for $60K yesterday and payment is now past due. You assured us you would do wire transfer yesterday. If you have not done so already, wire funds per instruction and confirm ASAP. Jim Brown C. cc: Legal" | There was and could be no purchase of units on investors', including LB's, behalf, and thus there were no sums past due. |
| March 1, 2019 | "Thank you for your interest in LASER FOOT SURGERY CENTERS in the Dallas, Texas metro area! Congratulations of becoming the proud owner of the last unit (VIP Unit). The wiring instructions are below. Please send the $60,000 wire ASAP and confirm via email. I will call you at 12:00 noon your time for your verbal confirmation. The unit is already yours as I purchased it for you as soon as we got off the phone so be sure to wire the funds now. Jim Brown." | In reality, there were no "VIP Units" in the offering. LFS Funding was seeking significantly more funds beyond those which LB was being asked to contribute, thus the statement that the interests LB purchased were the "last" was false. Additionally, the statement that "[t]he unit is already yours as I purchased it for you as soon as we got off the phone" was false. |

| Date | Statement | Why Statement Was False and/or Misleading |
|------|-----------|-------------------------------------------|
| March 4, 2019 (1) | "All investment purchase calls are recorded and you clearly purchased one VIP unit for $60K. We do not offer VIP units to regular clients. Jim [Brown] gave it to you because it was the last unit in the project. VIP units equal 2 regular units. This VIP unit was purchased for you per your verbal instructions and your verbal promise to wire the funds by the end of the day. The unit is yours and you will get a very large check within 60 days providing you honor your verbal contract and pay for your unit. If your current financial situation makes you unable to send in the full 60K right away we will allow you to pay half now and the other half after you receive your first check will will [sic] far exceed 60K. Is this agreeable? Email me back ASAP. Jen Gray Legal Dept." | The statements in this email were false because: (1) upon information and belief, solicitation calls were not recorded; (2) there were no VIP units or purported "regular clients"; (3) there was no "last unit" in the project with respect to LB's investment; (4) there was no basis for the statement that LB would "get a very large check within 60 days"; (5) there was no financing or payment plan; and (6) there was no "Jen Gray" or "Legal Department"—rather, the email was authored and sent by Comisar. |
| March 4, 2019 (2) | "Please text me now at [telephone number] or reply to this email now. The VIP unit is already in your account. Lets [sic] just figure out a fair way to pay something now and the rest after you get your first check. Jim Brown." | As explained above, there were no "VIP Units" and there were no units in LB's "account" because such an account did not exist. |

(*See* Ex. D.)  At the time Comisar sent the emails to LB, he knew or was reckless in not knowing that the statements contained in those emails were false and/or misleading.

42.    After being subjected to these high-pressure sales tactics, LB, on March 6, 2019, wired $30,000 to LFS Funding.  On the same day, the Purchasing Agent

wired $6,000 to Comisar as a commission on the sale. Shortly after LB wired his funds to LFS Funding, Comisar (still acting under the pseudonym "Jim Brown") again contacted LB and solicited him to invest in an oil-related investment offering.

## The Illicit Brokerage Activities

43.    In order to effectuate the LFS Funding Securities Offering, Thompson engaged and supervised multiple Unregistered Brokers to contact and solicit prospective investors to purchase LFS Funding's securities.

44.    Thompson, upon information and belief, knew some of the Unregistered Brokers from previous securities offerings he was involved with and sought others through recruiting advertisements he caused to be posted on Craigslist and other Internet platforms.

45.    Thompson reviewed the Unregistered Broker applications, such as that of Defendant Erskine and then made determinations as to whether or not to hire the Unregistered Brokers on LFS Funding's behalf and what their compensation would be.

46.    In regard to compensation, Thompson took pains to avoid creating a written record of the commissions he was willing to offer to the unregistered brokers, for example telling one potential unregistered broker on or about August 13, 2018, in an email that "…any discussion for questions and compensations [*sic*] either face to face or at least over the phone."

47.    The Unregistered Brokers, once engaged by Thompson, would, directly or indirectly, notify Thompson's associates of any investments that they were able to secure via their solicitation efforts for purposes of claiming commissions.

48.    Financial records indicate that Thompson offered and paid the Unregistered Brokers commissions of between 25% and 36% of the funds raised from investors.

49.    These commissions were generally paid from accounts in the name of the supplier (which were primarily funded by payments received by the supplier from

the Henderson Clinic which, in turn, received most of its funding from the partnership, which obtained its money from investors) either to the Unregistered Broker directly (*e.g.*, Defendant Comisar) or to companies affiliated with the Unregistered Broker (*e.g.*, to the relief defendants associated with Defendants Engelhardt and Erskine).

50.     Financial records indicate that Defendants Comisar, Engelhardt, and Erskine received, either directly or through companies they are affiliated with, commissions in at least the following amounts:

| Unregistered Broker | Commissions Paid To | Date Range of Payments | Total Payments ($) |
|---|---|---|---|
| Steven Comisar | Steven Comisar | 03/06/19 | $6,000.00 |
| Dale Engelhardt | Brookdale Consulting LLC | 01/11/19 – 03/08/19 | $10,500.00 |
| | Executive Performance Group, Inc. (both Engelhardt-affiliated companies) | 08/09/18 – 12/19/18 | $88,500.00 |
| Ross Erskine | Meridian Point, LLC | 10/26/18 – 05/29/19 | $29,062.50 |
| | Personal Group, LLC (both Erskine-affiliated companies) | 10/26/18 – 05/29/19 | $31,562.50 |
| **Total** | | **08/09/18 - 05/29/19** | **$165,625.00** |

51.     None of the Unregistered Brokers were registered as a broker or dealer with the Commission, nor associated with a broker or dealer registered with the Commission.

# FIRST CLAIM FOR RELIEF

## Violations of Sections 5(a) and 5(c) of the Securities Act

### [15 U.S.C. § 77e(a); 77e(c)]

#### (*Against each Defendant*)

52.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-51, inclusive, as if they were fully set forth herein.

53.     By engaging in the conduct described above each Defendant, directly or indirectly:

a.     made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell LFS Funding securities, as to which no registration statement was in effect, through the use or medium of any prospectus or otherwise;

b.     carried or caused to be carried through the mails or in interstate commerce, by any means or instrument of transportation, LFS Funding securities, as to which no registration statement was in effect, for the purpose of sale or for delivery after sale; and

c.     made use of any means or instruments of transportation or communications in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise LFS Funding securities as to which no registration statement had been filed.

54.     In regard to the sale of LFS Funding securities described herein, no exemption validly applied to the registration requirements described above.

55.     By reason of the foregoing, each of the Defendants violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a); 77e(c)].

## SECOND CLAIM FOR RELIEF

**Violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]**

**(*Against Defendants Thompson, Comisar, Engelhardt, and Erskine*)**

56. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-51, inclusive, as if they were fully set forth herein.

57. By engaging in the conduct described above, Defendants Thompson, Comisar, Engelhardt, and Erskine each:

a. engaged in the business of effecting transactions in securities for the account of others; and

b. directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker or dealer registered with the Commission.

58. By reason of the foregoing, Defendants Thompson, Comisar, Engelhardt, and Erskine each violated and, unless enjoined, will continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## THIRD CLAIM FOR RELIEF

### AIDING AND ABETTING

**Violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]**

**(*Against Defendant LFS Funding*)**

59. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-51, inclusive, as if they were fully set forth herein.

60. By engaging in the conduct described above, Defendants Comisar, Engelhardt, and Erskine each violated Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)], and Defendant LFS Funding, knowingly or recklessly, provided substantial assistance to Defendants Comisar, Engelhardt, and Erskine in their respective achievement of said violations.

61.     Pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of the Exchange Act, or of any rule or regulation issued under the Exchange Act, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

62.     By reason of the foregoing, Defendant LFS Funding is liable for violations of Section 15(a)(1) of the Exchange Act to the same extent as Defendants Comisar, Engelhardt, and Erskine are liable and, unless enjoined, will continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## **FOURTH CLAIM FOR RELIEF**

### **Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]**
### (*Against Defendants LFS Funding, Comisar, Engelhardt, and Erskine*)

63.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-51, inclusive, as if they were fully set forth herein.

64.     By engaging in the conduct described above, each of Defendants LFS Funding, Comisar, Engelhardt, and Erskine, directly or indirectly, individually or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce or by use of the mails,

a.     employed devices, schemes, or artifices to defraud;

b.     obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c.     engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit.

65.     With respect to violations of Section 17(a)(1) of the Securities Act, each of Defendants LFS Funding, Comisar, Engelhardt, and Erskine engaged in the above-referenced conduct knowingly or with severe recklessness.

66.     With respect to violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act, each of Defendants LFS Funding, Comisar, Engelhardt, and Erskine was at least negligent in its/his conduct and in the untrue and misleading statements alleged herein.

67.     By reason of the foregoing, Defendants LFS Funding, Comisar, Engelhardt, and Erskine each violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## FIFTH CLAIM FOR RELIEF

**Violations of Section 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1); 77q(a)(3)]**

**(*Against Defendant Thompson*)**

68.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-51, inclusive, as if they were fully set forth herein.

69.     By engaging in the conduct described above, Defendant Thompson, directly or indirectly, individually or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce or by use of the mails,

    a.  employed devices, schemes, or artifices to defraud and

    b.  engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit.

70.     With respect to violations of Section 17(a)(1) of the Securities Act, Defendant Thompson engaged in the above-referenced conduct knowingly or with severe recklessness.

18

71.     With respect to violations of Section 17(a)(3) of the Securities Act, Defendant Thompson was at least negligent in his conduct and in the untrue and misleading statements alleged herein.

72.     By reason of the foregoing, Defendant Thompson violated and, unless enjoined, will continue to violate Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1); 77q(a)(3)].

<h2 style="text-align:center">SIXTH CLAIM FOR RELIEF</h2>

<strong>AIDING AND ABETTING</strong>

<strong>Violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)]</strong>

<strong><em>(Against Defendant Thompson)</em></strong>

73.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-51, inclusive, as if they were fully set forth herein.

74.     By engaging in the conduct described above, Defendant LFS Funding violated Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)], and Defendant Thompson, knowingly or recklessly, provided substantial assistance to Defendant LFS Funding in its achievement of said violation.

75.     Pursuant to Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)], any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of the Securities Act, or of any rule or regulation issued under the Securities Act, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

76.     By reason of the foregoing, Defendant Thompson is liable for violation of Section 17(a)(2) of the Securities Act to the same extent as Defendant LFS Funding is liable and, unless enjoined, will continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## SEVENTH CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5]

### (*Against Defendants LFS Funding, Thompson, and Comisar*)

77.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-51, inclusive, as if they were fully set forth herein.

78.     By engaging in the conduct described above, each of Defendants LFS Funding, Thompson, and Comisar, directly or indirectly, individually or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce or by use of the mails,

a.     employed devices, schemes, and artifices to defraud;

b.     made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c.     engaged in acts, practices, and course of business which operated as a fraud and deceit upon purchasers, prospective purchasers, and other persons.

79.     Each of Defendants LFS Funding, Thompson, and Comisar engaged in the above-referenced conduct and made the above-referenced untrue and misleading statements knowingly or with severe recklessness.

80.     By reason of the foregoing, each of Defendants LFS Funding, Thompson, and Comisar have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5].

## EIGHTH CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and**

**Exchange Act Rules 10b–5(a) and 10b–5(c) [17 C.F.R. §§ 240.10b–5(a);**

**240.10b–5(c)]**

***(Against Defendants Engelhardt and Erskine)***

81. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-51, inclusive, as if they were fully set forth herein.

82. By engaging in the conduct described above, each of Defendants Engelhardt and Erskine, directly or indirectly, individually or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce or by use of the mails,

    a. employed devices, schemes, and artifices to defraud and

    b. engaged in acts, practices, and course of business which operated as a fraud and deceit upon purchasers, prospective purchasers, and other persons.

83. Each of Defendants Engelhardt and Erskine engaged in the above-referenced conduct knowingly or with severe recklessness.

84. By reason of the foregoing, each of Defendants Engelhardt and Erskine have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rules 10b–5(a) and 10b–5(c) [17 C.F.R. §§ 240.10b–5(a); 240.10b–5(c)].

## NINTH CLAIM FOR RELIEF

**VIOLATION OF ASSOCIATIONAL BAR THROUGH ACTING AS A**

**BROKER**

**Violation of Section 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. §**

**78o(b)(6)(B)(i)]**

***(Against Defendant Engelhardt)***

85. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-51, inclusive, as if they were fully set forth herein.

86.     Defendant Engelhardt, who has previously been made the subject of a Commission bar from associating with any broker, dealer, investment adviser, municipal securities dealer, or transfer agent, with such previous bar being in effect, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase and sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker-dealer registered with the Commission (*i.e.*, he acted as a broker in violation of the Commission bar).

87.     By reason of the foregoing, Defendant Engelhardt violated and, unless restrained and enjoined, will continue to violate Section 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. 78o(b)(6)(B)(i)].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

### **I.**

Permanently restraining and enjoining each Defendant from, directly or indirectly, engaging in conduct in violation of Sections 5 and 17(a) of the Securities Act [15 U.S.C. §§ 77e; 77q(a)]; Sections 10(b) and 15(a)(1) of the Exchange Act [15 U.S.C. §§ 78j(b); 78o(a)(1)]; and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5];

### **II.**

Permanently restraining and enjoining Defendant Engelhardt from, directly or indirectly, engaging in conduct in violation of Section 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. 78o(b)(6)(B)(i)];

### **III.**

Permanently restraining and enjoining each of Defendants Thompson, Comisar, Engelhardt, and Erskine from, directly or indirectly, including, but not

limited to, through any entity owned or controlled by each, soliciting any person or entity to purchase or sell any security;

## IV.

Permanently restraining and enjoining Defendant Thompson from, directly or indirectly, including, but not limited to, through any entity owned or controlled by Defendant Thompson, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Defendant Thompson from purchasing or selling securities for his own personal account;

## V.

Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], unconditionally and permanently prohibit Defendant Thompson from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15o(d) of the Exchange Act [15 U.S.C. § 78o(d)];

## VI.

Ordering each of Defendants Comisar, Engelhardt, Erskine, and each Relief Defendant to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

## VII.

Ordering each of Defendants Thompson, Comisar, Engelhardt, and Erskine to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

## VIII.

Retaining jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

**IX.**

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

Dated:  May 20, 2021

*/s/ Tracy S. Combs*
TRACY S. COMBS
CASEY R. FRONK
AMY JANE LONGO
Attorneys for Plaintiff
Securities and Exchange Commission
